DEVELOPMENT BANK OF AMERICAN SAMOA, Plaintiff

v.

FRANK AND LELEAGA REED, Defendants

AMERÍCAN SAMOA GOVERNMENT EMPLOYEES
FEDERAL CREDIT UNION, Garnishee

High Court of American Samoa
Trial Division

CA No. 110-85

August 17, 1987

Before REES, Chief Justice, and VAIVAO, Associate Judge.

Counsel: For Plaintiff, Robert Dennison
         For Garnishee, Charles Ala'ilima

On Motion for Judgment against Garnishees:

Plaintiff, the Development Bank, had judgment in the amount of $85,995.73 against defendants Frank and Leleaga Reed. On May 1, 1987, plaintiff served a notice of garnishment on the Credit Union, forbidding it to pay any debt it might owe to the Reeds and requiring it to retain any of the Reeds' property that might be in its possession. The notice also required the Credit Union either to answer a set of interrogatories propounded by the Development Bank or to appear in court to answer

questions about any property and debts of the Reeds.

The Credit Union eventually appeared in court and admitted that both of the Reeds had savings accounts in the Credit Union, but asserted that the bulk of the funds in these accounts were pledged to secure loans to the Reeds from the Credit Union itself. The Credit Union maintains that the pledge gives it a lien prior to that of the Development Bank.

The Development Bank maintains that no law of American Samoa provides for a such lien; that the Credit Union did not comply with A.S.C.A. § 27.1510(2), providing that certain security interests are ineffective unless recorded in the office of the Territorial Registrar; and that the Credit Union lost any lien it might have had by giving Mr. Reed "constructive possession" of the funds and letting him "exercise dominion" over them by using them to pay off the Credit Union loan on May 18.

No territorial statute provides for the security device known as pledge. Indeed, there are hardly any statutes in American Samoa dealing with secured transactions. This does not mean, however, that it is impossible to have any such transactions. Rather, they are governed by common law principles except where those principles have been modified by statute or are otherwise inappropriate to local conditions. See A.S.C.A. § 1.0201 (reception of the common law in American Samoa); Tung v. Ah Sam, 4 A.S.R. 764 (1971) (in construing the common law, the High Court should ordinarily follow the Restatement of the Law).

Pledge was an institution firmly established in the common law. The first section of the Restatement of Security (1941) provides:

> A pledge is a security interest in a chattel or in an intangible represented by a bailment for the purpose of securing the payment of a debt or the performance of some other duty.

As long as the pledgee retains possession of the thing pledged, he has a lien on it superior to those of judgment creditors. See Restatement of Security § 28 (1941). The essence of pledge is that the pledgor retains title to the property while transferring possession to the pledgee in order to

secure a debt. Intangibles (such as the funds in the Reeds' savings accounts) can be the subject of a pledge, but it is harder in such cases to determine who has "possession" of them. Courts have generally found sufficient possession of an intangible if the pledgor effects the transfer of an "indispensable instrument" that stands for the right to the intangible. If there is no such instrument, the pledgee must establish that he had actual control over the funds to the exclusion of the pledgor.

In this case the Credit Union has established that it had control over the pledged funds. According to the terms of its loan contracts with the Reeds and other borrowers, the borrower must deposit money into his savings account every two weeks by automatic payroll deduction. These deposits continue until the amount in the savings account is equal to half of the amount borrowed. During this time and thereafter the borrower must also make automatic payroll deposits to pay off the loan itself. All funds in the savings account are frozen --- that is, no withdrawals are allowed--- until the amount due on the loan has been reduced to an amount lower than the amount in the savings account. At that point the borrower may withdraw only the excess; funds must be left in the account that are sufficient to secure the entire remaining balance on the loan.

This procedure establishes the pledgor's dominion to our satisfaction. It is quite similar to other arrangements that have been held to create liens superior to those of judgment creditors. In Duncan Box & Lumber Co. v. Applied Energies, 270 S.E.2d 140 (W. Va. 1980), a bank made a business loan to the defendant for the purchase of a tract of land for subdivision and resale. A deed of trust served as security. When the defendant sought further financing to bankroll the actual resale, the bank required additional security in the form of a "reserve account." Defendant would maintain a balance of at least 25% of the unpaid debt and the bank would retain exclusive control of the account. The bank filed no financing statement to memorialize this security interest. After the defendant obtained the loans and incurred debts to third parties, it went out of business. A third party judgment creditor sought to satisfy its judgment by attaching the funds in the reserve account. After finding that "[t]he agreement creating the reserve account was essentially a common law pledge," the court held the bank's

-138-

interest in the reserve account superior to that of the judgment creditors. 270 S.E.2d at 142.

The _Duncan Box_ court noted that the pledge of a bank account is assessed under common law principles rather than the provisions of the Uniform Commercial Code or other statutes. Even though there was no "indispensable instrument," the agreement was "unmistakably intended to give the bank collateral security." _Id_. at 145. The defendant was required to make periodic payments into the account and had no access to deposited funds; only the bank could reach them.

The court further observed that it would be difficult if not impossible for a bank to prove a pledge interest in a bank account to which the depositor had withdrawal rights. 270 S.E.2d at 146 n.11. _Cissell v. First National Bank of Cincinnati_, 476 F. Supp. 474 (S.D. Ohio 1978), also suggests this distinction. In discussing a statutory "security by possession" mechanism "akin to the common law 'pledge'," the court found no security interest in a bank account from which the debtor freely withdrew. _Id_. at 490-91. The court stated two important caveats. It stressed that its holding applied only to the facts as they existed before the parties had established a "collateral" account, more like that involved in the present case, which might have fit the requirements of a common law pledge. _Id_. at 491 n.9. Furthermore, the court declined to discuss the possibility of a security interest in an account containing funds alleged to be security commingled with other funds.

_Duncan Box_ and _Cissell_ indicate that funds held in the exclusive control of the creditor as security for a debt establish a common-law pledge even in jurisdictions in which the law of secured transactions is mostly statutory. This is part of the answer to the Bank's contention that the Credit Union's lien is ineffective for failure to comply with the recordation statute. The rest of the answer is suggested by a perusal of the language and structure of the statute itself. A.S.C.A. § 27.1510 provides that no "mortgage, bill of sale, conditional sales contract, deed of trust or conveyance of personal property which is not accompanied by a permanent delivery thereof to the vendee" is valid "as to persons who do not have actual notice" unless certain conditions are met. (Emphasis supplied.) The conditions are recordation, a writing signed in the presence of a

-139-

witness, and an accurate description of the thing sold or secured and of the consideration. Id.

The obvious purposes of the statute are (1) to protect people who might otherwise extend credit to other people in the mistaken belief that they own the things they possess and that those things are therefore likely to be available as security for any unpaid debts; and (2) to foil fraudulent assertions by judgment debtors that property in their possession actually does not belong to them but has been purchased by or hypothecated to friends or relatives. The transactions referred to in the statute are those which attempt to create non-possessory security interests.[1] In the case of possessory interests, the possession of the thing by the creditor is at least as effective as recordation would be in giving notice to innocent third persons that the debtor may not own the thing free and clear. It is extremely unlikely, for instance, that anyone would extend credit in the

---

[1] Although the requirement of "permanent delivery to the vendee" seems to be explicit only in its application to the last item on the list (conveyances of personal property), the distinction is implicit with regard to the other transactions covered by the statute. The security devices on the list (mortgage, deed of trust, and conditional sales contract) are those in which the person possessing the security interest does not possess the thing itself. The only remaining item on the list is the "bill of sale"; since such a document would purport to embody a "conveyance," the statute would not prevent it from being effective without recordation so long as it involved personal property and was accompanied by a transfer of possession.

belief that the debtor has an unencumbered interest in a bank account unless this has been confirmed by the bank itself.[2]

The principle of A.S.C.A. § 27.1510 is the same one that generated the distinction between the common-law institution of pledge and non-possessory devices such as mortgage: possession is essential to the former, while recordation or some other substitute for possession is essential to the latter. This distinction has survived the enactment of the secured transactions statutes in the United States, and it is still the law in American Samoa.

We also disagree with the Development Bank's contention that the Credit Union gave Mr. Reed "constructive possession" or allowed him to "exercise dominion" over the funds by allowing him to use $1873.80 in the pledged account to pay off the loan for which it was pledged. That the funds were earmarked for the payment of the loan was the very reason neither Mr. Reed nor the Development Bank had any right to them; paying off the secured loan was the only thing the Credit Union could allow Reed to do with the account that did not constitute possession or dominion. The payment of the loan with the secured funds amounted to a bookkeeping entry rather than a real transfer of assets; it did not enrich Mr. Reed and it did not injure the Bank or any other creditor. Reed's creditors had exactly the same rights against exactly the same amount of his property after the transaction as they did before it.

The Credit Union admits that it possesses, or did possess at some time after it was served with the notice of garnishment, $661.05 in unsecured funds belonging to Frank Reed. The Development Bank maintains that the correct amount is $789.94. The Bank appears to be correct: the Credit Union

---

2 We are not called upon to decide whether a financial institution could lose its prior lien on pledged funds by confirming the debtor's ownership of the funds without mentioning the encumbrance on them. Assuming that the person thus misled acted to his detriment on the information, such a result would seem quite consistent with the principles governing the law of secured transactions. It did not happen, however, in this case.

-141-

allowed Mr. Reed to withdraw $400 on May 5 and $289 on May 18, and still holds $100.94.

Judgment will issue for the Development Bank against the Credit Union in the amount of $789.94.